Filed 10/18/24  In re C.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.C. et al., Persons Coming Under the Juvenile Court Law. | C100134 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.O.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD241737, JD241738) |

Appellant S.O. (mother) appeals from the juvenile court's orders denying her petition to modify a previous order and selecting permanent plans of adoption and guardianship for minors C.C. and J.C., respectively.  (Welf. & Inst. Code,[1] §§ 366.26, 388, 395.)  Mother contends the juvenile court abused its discretion in denying her

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

petition for modification that sought return of the minors to her custody or, alternatively, reinstatement of reunification services. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2022, the Sacramento County Department of Child, Family and Adult Services (Department) filed section 300 petitions on behalf of minors J.C. (then age 11) and C.C. (then age 10). The minors had been placed into protective custody after they were discovered alone in the streets at night. Law enforcement officers had responded to a report that two adult males were pulling two minors in a wagon and C.C. mouthed to a bystander, " 'Help me.' " The minors apparently ran but the officers were able to catch up with them. The officers were unable to locate any parent or ascertain a home address for the children.

Both minors were visibly upset when they were interviewed, with C.C. sitting in a fetal position with her hands covering her head. The minors reported that they were homeless and were left with father every weekend. C.C. reported that they had been left with father on December 28, 2021, and had not seen mother since that time. They were often left alone with J.C. responsible for watching C.C. J.C. reported he did not feel safe with either parent, begged not to be returned to their care, and warned the social worker that his parents were " 'not good people.' " He recalled being removed from parental custody in the past and said he wished to be returned to his former foster mother. C.C. reported she did not feel safe with father, but did not report feeling unsafe with mother and wished to be returned to her care.

When mother was located and interviewed, she was emotional and fidgety. She was evasive when asked if she was under the influence but eventually responded that she may be under the influence of cannabis. She said she had used methamphetamine in 2017 but claimed to have been clean since then. Mother, however, was reluctant to submit to a drug screening but ultimately agreed and tested positive for methamphetamine and amphetamine.

Mother was aware of father's substance abuse issues. Mother also has a history of substance abuse dating back to at least January 2017. J.C. had come within the juvenile court's jurisdiction in 2010 due to mother's failure to obtain medical treatment for the infant when he had a life-threatening problem. Mother received family services from July 2010 to October 2011 in connection with that case. Mother received voluntary services from November 2014 to March 2015 after reports of general neglect, domestic violence, and father's substance abuse. Both J.C. and C.C. were removed from parental custody in June 2017 after reports of general neglect, emotional abuse, domestic violence, and mother's substance abuse. Mother received family services from June 2017 to July 2020, including substance abuse testing and services. She completed parenting classes, drug treatment services, and other services, but continued to test positive for opiates and had been discharged from two different drug treatment programs. Nonetheless, the dependency was terminated after mother had been able to demonstrate behavioral changes.

In March 2021, a referral had been received by Santa Fe County child protective services in New Mexico that included allegations that mother was using methamphetamine and heroin, and while under the influence and in the minors' presence, was having " 'freak outs' " wherein she would throw stuff and hurt herself. It was reported that mother stored the methamphetamine and heroin in a container that was easily accessible to the minors, that she would trade her food stamps for the drugs, and leave the minors home alone every day for several hours at a time. The allegations were ultimately unsubstantiated and "[n]o services were implemented because the family had moved away without . . . notice."

Prior to the jurisdiction hearing in the present case, C.C. reported that the parents both used controlled substances. By February 2022, C.C. was refusing to visit with mother and was adamant that she did not want to be returned to mother's care, even if mother were to "get[] sober." C.C. was concerned that mother would return to hitting

3

them and abusing drugs when the Department was no longer involved. C.C. reported she liked her foster family. Both minors had expressed they were struggling with anger issues.

On February 17, 2022, the juvenile court sustained the section 300 petitions, adjudged the minors dependents, ordered them removed from parental custody, and ordered reunification services for mother. Mother was ordered to abstain from the use of alcohol or any other controlled substances or intoxicants.

In March 2022, J.C. was placed in the home of his previous foster parent. C.C. reported that she did not want to be placed with J.C. and wished to remain in her own placement. By August 2022, mother had been having sporadic visits with J.C. C.C. had visited once or twice with mother but otherwise refused to visit. She reported that visitation with mother was not going well, nothing would improve the situation, and she did not want to visit mother anymore. Mother had not been participating in the minors' individualized education programs. By August 2022, she had still not completed her parenting education and she had not been in contact with the individual counseling provider for four months. She completed a substance use disorder assessment but declined the services. Mother had tested positive seven times and failed to test six times between January 3 and March 29, 2022. She had started a Specialized Treatment Recovery Services (STARS) substance abuse outpatient program in May but had been noncompliant due to positive tests for cocaine and methamphetamine, failures to test, absences from treatment and support group, and missed contacts with her recovery specialist. She completed another assessment on July 29, 2022, and was placed on the waitlist for residential treatment.

The juvenile court found mother had made minimal progress in her case plan services but continued her reunification services.

In February 2023, the Department recommended mother's reunification services be terminated. It noted that it was mother's pattern to engage in services right before a

4

court date and then cease participation a few weeks later. Mother had still not started individual counseling and had completed only one parenting education session. She had the information to schedule her mental health assessment but had not contacted the provider. Mother had started a residential program on August 19, 2022, but was discharged on September 8, 2022. Mother then completed a 29-day residential treatment program on October 20, 2022, but she had insisted on leaving with no discharge plan in place and was subsequently and consequently noncompliant with dependency family treatment court due to unexcused absences from support group, missed contacts with her recovery specialist, failures to test, and positive tests. Mother was noncompliant in dependency family treatment court for every reporting period.

During this reunification period, the minors did not have any visits with mother because they refused to visit with her. They were adamant that they did not want contact with mother and had not had any contact with her since March 2022. C.C. did not want to reunify with mother and both minors reported they wanted to remain in their current placements.

By the time of the scheduled March 9, 2023 12-month review hearing, mother had completed five parenting class sessions. The matter was set for a May 2023 contested hearing. In an addendum prepared for the contested hearing, the Department reported that mother had been discharged from another residential treatment program on April 7, 2023, and discharged from the dependency family treatment court outpatient program due to noncompliance. She had not completed the parenting education course that she had been previously enrolled in and was scheduled to begin another course with a different provider on April 24, 2023. The minors continued to refuse to visit with her.

On May 31, 2023, the juvenile court found mother had made minimal progress in her case plan, terminated mother's reunification services, and ordered general visitation between mother and the minors, with a minimum of monthly visits with C.C. The matter was set for a section 366.26 hearing.

By September 2023, J.C. had been visiting with mother twice a month, supervised, and expressed a desire to continue visits. C.C. continued to refuse to visit but had written mother a couple of notes and accepted letters and a gift from her. C.C.'s negative behaviors had escalated over the past year resulting in her caretakers' indecision about providing permanency. J.C. had clearly stated he did not want to be adopted and preferred guardianship for his plan. His caretaker was committed to a permanent plan of guardianship and supported J.C.'s desire to maintain contact with mother and his family of origin. A contested hearing was set for October 30, 2023.

On October 3, 2023, mother filed a section 388 petition for modification seeking placement of the minors in her custody or, alternatively, reinstatement of reunification services. She alleged the minors could be safely reunified with her as she was clean and sober and had appropriate housing, and she believed J.C. wanted to live with her and it was in C.C.'s best interests to return home, as well.

The hearing on mother's petition for modification took place in conjunction with the October 30, 2023 section 366.26 hearing. The parties stipulated that "[i]f mother were to testify she would state: [¶] She ha[d] been participating in urinalysis drug testing. [¶] She ha[d] refrained from using substances. [¶] She ha[d] participated in treatment to maintain sobriety." The parties also stipulated to the admission of several attachments to mother's petition, including documentation that she had completed a parenting class from April 24, 2023, through June 7, 2023; participated in four sessions of individual counseling between July 26, 2023, and August 30, 2023; and a letter stating that she was employed at an auto parts store. The parties also stipulated to additional evidence of a September 8, 2023 visit observed by a social worker during which J.C. told mother he wanted to live with her.

The juvenile court commended mother on participating in services on her own but noted that it had to find both a change of circumstances and that the requested order was going to be in the best interests of the minors. Finding mother did not meet her burden of

6

proof, the juvenile court denied her petition. It then selected adoption as C.C.'s permanent plan and guardianship, with ongoing visitation with mother, as J.C.'s permanent plan.

Mother filed timely notices of appeal as to each minor on December 19, 2023.

DISCUSSION

Mother contends the juvenile court abused its discretion in denying her section 388 petition. We disagree.

Section 388, subdivision (a) provides that a parent of a dependent child may petition the juvenile court "upon grounds of change of circumstance or new evidence . . . for a hearing to change, modify, or set aside any order of court previously made." Section 388 permits modification of a dependency order if a change of circumstance or new evidence is shown and if the proposed modification is in the best interests of the minor. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.)

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) " 'A petition [that] alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests.' " (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206.) The child's "best interests are not to further delay permanency and stability in favor of rewarding [the parent] for [his or] her hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

The party petitioning for modification has the burden of proof by a preponderance of the evidence of both changed circumstances or new evidence and that the requested order would serve the minor's best interests. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47-48, disapproved on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) A modification "petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) Here, the juvenile court found that mother had not demonstrated a change in circumstances, nor was the proposed modification in the minors' best interests. We conclude the juvenile court did not abuse its discretion.

We first note that some of the conditions mother supplied in support of her petition existed at the time her reunification services were terminated and the section 366.26 hearing was set and, as such, were not new or changed circumstances. She had been employed since March 2023 and completed five weeks of the six-week parenting class prior to the termination of her services.

The new or "changed" circumstances alleged were her four therapy sessions from July 26 to August 30, 2023, her subsequent weekly telephone check ins with the therapist pending her finding a new therapist, J.C.'s resumption of visits with mother, and mother's assertion that she participated in treatment to maintain sobriety, had been participating in drug testing, and had refrained from using substances for an unspecified period of time. In this regard, mother had shown, at best, only that her circumstances might be changing. While mother asserted that she participated in treatment to maintain sobriety, she had participated in numerous treatment programs over the years and had failed to rectify her substance abuse problem. Her claimed unspecified period of alleged sobriety was unsupported by negative drug tests or other evidence and, in any event, lacked sufficient longevity after a documented six-year addiction to establish a changed, rather than changing, circumstance. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075,

8

1081 [affirming the denial of a § 388 petition when the parents' efforts at drug rehabilitation were only three months old at the time of the § 366.26 hearing]; *In re Casey D.*, *supra*, 70 Cal.App.4th at pp. 42, 47-48 [affirming the denial of a § 388 petition when the mother with an extensive history of drug use had been drug free for only a few months and had not completed her treatment program]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [no abuse of discretion in denying a § 388 petition where the parent established only a 372-day period of abstinence].)

Mother did not meet her burden to establish a legitimate change of circumstances. Thus, we need not address the second prong of section 388, which required a showing that the return of the minors to mother was in the minors' best interest. However, the failure to sufficiently prove she can remain sober so that the minors would be safe in her care renders return of the minors to mother's custody decidedly not in their best interests.

Nor did mother demonstrate that placing the minors' futures on hold and reinstating reunification services (her alternative request) was in the minors' best interests. " '[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate.' " (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 627, quoting *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308.) Reunification services are ordinarily limited to a maximum of 18 months after the child was originally removed from parental custody. (§ 366.22, subd. (a); *Michael G.*, at pp. 625-627.) Extension of services to a maximum of 24 months applies for three narrowly defined categories of parents—none of which are applicable here.[2] (§§ 366.22, subd. (b), 361.5, subd. (a)(4);

---

[2] Those categories are parents who have faced specified obstacles to reunification: (1) a parent making progress "in a court-ordered residential substance abuse treatment program"; (2) "a parent who was either a minor parent or a nonminor dependent parent at the time of the initial hearing"; and (3) "a parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland

9

*Michael G.*, at p. 628.)  Moreover, even the 24-month period was set to expire only approximately two months after the date of the hearing.  Mother did not prove that two months of additional services would have been sufficient to establish she had rectified her substance abuse issue that led to the minors' removal, such that they could be returned to her at that time, and offered no authority that would have allowed the court to disregard the statutory limitation set forth in subdivision (a)(4) of section 361.5.  And reinstating services for such a short period without substantial assurance of return would serve only to disrupt the stability the minors had obtained in their placements.

The denial of mother's section 388 petition for modification was well within the juvenile court's discretion.

DISPOSITION

The juvenile court's orders are affirmed.


/s/_____
ROBIE, Acting P. J.


We concur:


/s/_____
MAURO, J.


/s/_____
DUARTE, J.

_____

Security."  (§ 366.22, subd. (b); see *Michael G. v. Superior Court*, *supra*, 14 Cal.5th at p. 628.)

10